# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-7129

ANDREW U.D. STRAW, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided June 26, 2020)

*Andrew U.D. Straw*, *pro se.*

*William A. Hudson, Jr.*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; *Kenneth A. Walsh*, Deputy Chief Counsel; and *Lance P. Steahly*, all of Washington, D.C., were on the brief for the appellee.

Before GREENBERG, TOTH, and FALVEY, *Judges*.

TOTH, *Judge*: Following revelations that the drinking water at Marine Corps Base Camp Lejeune in North Carolina had for decades been contaminated by solvents and other chemicals, Congress passed and the President signed the Honoring America's Veterans and Care for Camp Lejeune Families Act of 2012, Pub. L. No. 112-154, 126 Stat. 1165 (codified in scattered sections of 38 U.S.C.) (the "Act"). Among other things, the Act provides healthcare benefits for certain family members of veterans who had been stationed there for at least 30 days over a 35-year period. The appellant, Andrew U.D. Straw, is seeking such benefits. Representing himself, he appeals a December 2018 Board decision that denied payment or reimbursement for non-VA medical care related to neurobehavioral problems that purportedly stem from his exposure at Camp Lejeune.[1] Because the Board correctly determined that Mr. Straw did not meet the statutory criteria to qualify

---

[1] Although the Court frequently refers a pro se appeal deemed appropriate for panel resolution to the Veterans Consortium Pro Bono Program to ascertain whether counsel can be retained, *see, e.g.*, *Thompson v. Wilkie*, 30 Vet.App. 345, 347 (2018), such action is not called for here. As noted below, Mr. Straw is an attorney, and he has already discharged one firm during these proceedings. The appellant has expressed no desire for the assistance of counsel. We therefore resolve this case on the briefs, concluding that oral argument would not be of material assistance in resolving the appeal.

for these benefits—i.e., that he had not, in the Act's language, "resided at Camp Lejeune"—the Court affirms.

## I. BACKGROUND

Under the Act, "a veteran who served on active duty in the Armed Forces at Camp Lejeune, North Carolina, for not fewer than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, is eligible for hospital care and medical services" for specified illnesses or conditions. 38 U.S.C. § 1710(e)(1)(F). In another provision titled "Health care of family members of veterans stationed at Camp Lejeune, North Carolina," the Act extends VA benefits to certain family members of veterans, again with respect to specified illnesses or conditions.[2] This is the provision primarily at issue here. It states that

> a family member of a veteran described in subparagraph (F) of section 1710(e)(1) of this title who *resided at Camp Lejeune*, North Carolina, for not fewer than 30 days during the period described in such subparagraph or who was in utero during such period while the mother of such family member resided at such location shall be eligible for hospital care and medical services furnished by the Secretary for any of the illnesses or conditions described in such subparagraph, notwithstanding that there is insufficient medical evidence to conclude that such illnesses or conditions are attributable to such residence.

38 U.S.C. § 1787(a) (emphasis added).

VA's implementing regulation advises that "VA will provide payment or reimbursement for certain hospital care and medical services furnished to Camp Lejeune family members by non-VA health care providers." 38 C.F.R. § 17.410(a) (2019). The regulation also defines several key terms. For the Act's purposes, "Camp Lejeune means any area within the borders of the U.S. Marine Corps Base Camp Lejeune or Marine Corps Air Station New River, North Carolina." 38 C.F.R. § 17.400(b) (2019). A "Camp Lejeune family member" means someone who (1) "[r]esided at Camp Lejeune (or was in utero while his or her mother either resided at Camp Lejeune or served at Camp Lejeune . . . for at least 30 (consecutive or nonconsecutive) days during the period beginning on August 1, 1953, and ending on December 31, 1987"; and (2) was married to, was a legal dependent of, or is related by birth to "a Camp Lejeune veteran." 38 C.F.R. § 17.410(b). And a "Camp Lejeune veteran means any veteran who served at Camp Lejeune

---

[2] These conditions include "neurobehavioral effects," from which Mr. Straw contends he suffers, as well as breast cancer, from which his mother died in 1997. R. at 197; *see* 38 U.S.C. § 1710(e)(1)(F)(iii), (xiv).

on active duty . . . in the Armed Forces for at least 30 (consecutive or nonconsecutive) days during the period beginning on August 1, 1953, and ending on December 31, 1987"; this includes a veteran who "was stationed at Camp Lejeune, or traveled to Camp Lejeune as part of his or her professional duties." 38 C.F.R. § 17.400(b).

With the law established, the Court turns to the circumstances of this case. The Board found the following facts to be undisputed:

- The appellant is the son of veteran Phillip Straw;
- The veteran was a member of Marine Heavy Helicopter Squadron 461, based at Marine Corps Air Station New River, North Carolina;
- The appellant was born on March 19, 1969, at Camp Lejeune Naval Hospital;
- The appellant and his mother stayed at the hospital from March 19 to March 22, when they were discharged; and
- Hospital records and the appellant's birth certificate list as his parents' residence a home address in Jacksonville, North Carolina.

The Board assumed that the veteran's posting at Air Station New River qualified him as a Camp Lejeune veteran.[3] And it acknowledged that the appellant was related to the veteran by birth. But the Board found that Mr. Straw did not assert—and the record did not show—"that either he, or his mother while he was in utero, actually had any residence at Camp Lejeune on base, temporary or permanent, or otherwise actually lived on the base." R. at 5.

The Board considered his assertions that his mother "regularly visited and was present at Camp Lejeune at least 27 days during her pregnancy with the appellant"; that she, with the appellant, "regularly visited the base after he was born, as she received food and services, shopped, used the swimming pool, and engaged in social activity there, like others living off base"; and that she, "in addition to the March 19 to 22 stay at the Camp Lejeune hospital, . . . was at the hospital on 8 occasions between September 1968 and March 1969." *Id*. And it acknowledged Mr. Straw's argument that these facts showed he "constructively" resided at Camp Lejeune and, on that basis, should qualify under the Act for payment or reimbursement of his medical care. *Id*. The Board,

---

[3] Although the Board seemed only to have *assumed* for purposes of this case that Air Station New River counted as part of Camp Lejeune, the regulations explicitly treat it as such. *See* 38 C.F.R. § 17.410(b) (cross-referencing the definition in § 17.400(b)). But even if the Board overlooked this provision, its assumption means that the oversight had no effect on its analysis.

however, rejected this argument. It found that the statute's use of the term "resided at" was clear and unambiguous and excluded family members that "merely visit[ed]" or "spen[t] time at the base." R. at 6. Therefore, the Board denied the claim.

## II. ANALYSIS

Mr. Straw appeals and makes many of the same assertions he did below. First, he contends that his father's having been "stationed at" Camp Lejeune should by itself be enough to entitle him to the benefits provided by section 1787. The appellant next contends that he should be "deemed" to have resided at the base because he was frequently exposed to contaminated water during the numerous trips made to the base by his mother while he was in utero and by him after his birth. Alternatively, Mr. Straw argues that the Board narrowly construed the term "resided at" to exclude family members in his circumstances, which is inconsistent with the Act's remedial purpose. Finally, he maintains that the statutory 30-day residency requirement at Camp Lejeune for family members is irrational and unjust and, therefore, unconstitutional.

Mr. Straw's appeal turns on the phrase "resided at Camp Lejeune." 38 U.S.C. § 1787(a). The term's meaning is a question of statutory interpretation, a legal inquiry that the Court undertakes for itself. *See Casey v. Wilkie*, 31 Vet.App. 260, 265-66 (2019). Because "resided at" isn't defined by the Act, the term must be given its ordinary meaning. *See Saunders v. Wilkie*, 886 F.3d 1356, 1362 (Fed. Cir. 2018). "To 'reside' is '[t]o dwell permanently or for a considerable time' or 'to have one's settled or usual home in or at a particular place.'" *United States v. Williams*, 836 F.3d 1, 7 (D.C. Cir. 2016) (quoting OXFORD ENGLISH DICTIONARY (2d ed. 1989)); *see also Reside*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/reside ("to dwell permanently or continuously: occupy a place as one's legal domicile"). In other words, the Act requires that a family member seeking VA benefits have actually dwelled or lived at Camp Lejeune.

Here, the Board found that neither Mr. Straw nor his parents resided at Camp Lejeune. Rather, they resided in Jacksonville, R. at 4-5, a community that the appellant admits was some seven to eight miles away from the area constituting Camp Lejeune, Appellant's Br. at 22. In fact, nowhere in any submission to the Court does the appellant contest the Board's conclusion that neither he nor his mother "resided at" Camp Lejeune as that phrase is commonly understood. He instead argues that the phrase "resided at" should be given something other than its ordinary

4

meaning or disregarded altogether. As explained below, however, such arguments are not persuasive.

The Act provides benefits for all veterans who "served . . . at Camp Lejeune." 38 U.S.C. § 1710(e)(1)(F).[4] But a family member wishing to obtain benefits under the Act must show, not only a qualifying relationship to a veteran who "served . . . at Camp Lejeune" but also that the family member "resided at such location." 38 U.S.C. § 1787(a). Mr. Straw contends that, because a veteran who served at the base is eligible for VA benefits without having lived at the base, the same should be true for family members. That is, as long as a veteran was stationed at Camp Lejeune, the veteran's family members should qualify for benefits under section 1787. Appellant's Br. at 3-4, 6-8, 24.

Contrary to Mr. Straw's assertion, however, the "served at"—"resided at" distinction is one Congress expressly set forth in the statutory text. A veteran who "served," but did not "reside," at Camp Lejeune may be entitled to VA medical treatment or reimbursement for non-VA medical treatment, but a family member may be similarly entitled only if the family member "resided" there. To treat the service of a veteran at Camp Lejeune as sufficient to establish a family member's eligibility for VA benefits would be to read the residency requirement out of the Act. A statute cannot be interpreted in a way that renders a key part of its plain text superfluous. *See Buffington v. Wilkie*, 31 Vet.App. 293, 301 (2019).

The plain text of the Act also forecloses the appellant's arguments regarding constructive residence at Camp Lejeune. Mr. Straw stresses that he and his mother visited the base frequently over the 18 months his father was stationed there. Appellant's Br. at 22. In these circumstances, he maintains, he should be "deemed" to have "resided at" Camp Lejeune. *Id*. at 4. But where Mr. Straw's previous argument asked the Court to read language out of the law, this argument asks the Court to read language into the law. Congress certainly could have crafted a statute that provided benefits based on the presumption that the family members of Camp Lejeune veterans, even though not residing there, would become exposed to contaminated water through frequent trips to the base for shopping, medical care, recreation, and the like. That is, the Act could have specified that family members able to demonstrate such regular presence at Camp Lejeune would be "deemed"

_____

[4] The text of section 1710 refers to veterans who "served . . . at" Camp Lejeune, while the title of section 1787 and the text of relevant regulations refer to veterans "stationed at" Camp Lejeune. The appellant doesn't allege any material difference between these terms, and the Court assumes they are synonymous.

to reside there. *Cf.* 38 U.S.C. § 103(a) (specifying circumstances in which a legally invalid "purported marriage shall be *deemed to be* a valid marriage" (emphasis added)). But it does not. Instead, it imposes a residency requirement for family members that their residence had to be "at" Camp Lejeune, not "near" it or within a certain radius of it. *See* 38 U.S.C. § 1787(a). Adopting Mr. Straw's interpretation of section 1787 would be impermissibly adding words to the law that are not there. And we cannot add to the statute what Congress omitted. *See Payne v. Wilkie*, 31 Vet.App. 373, 385 (2019).

Although Mr. Straw recognizes that the interpretations he advances run counter to "the plain language" of the statute, Appellant's Br. at 27, he nevertheless contends that his readings best effectuate the main purpose of the Act, which is to compensate those harmed by the Camp Lejeune contaminations, *id.* at 17. "But no legislation pursues its purposes at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987). As explained above, the Act's text clearly requires that a family member have "resided at Camp Lejeune" to be eligible for VA benefits. Despite section 1787's remedial nature, "even the most formidable argument concerning the statute's purposes" cannot "overcome the clarity . . . in the statute's text." *Atilano v. Wilkie*, 31 Vet.App. 272, 281 (2019). Where, as here, the meaning of a statute's language is plain, a court cannot ignore it in favor of a reading that the court believes would better achieve the statute's purpose.

The appellant's last and most forceful assertions are that section 1787's 30-day Camp Lejeune residency requirement for family members seeking VA benefits defies a rational explanation. For example, Mr. Straw thinks it "nonsensical" to limit benefits to "family members who lived in base housing when the Marines themselves are covered simply by being anywhere on the base for 30 days." Appellant's Br. at 16. Likewise, he finds it "absurd" that a veteran's resident child is "covered just because they slept somewhere on the base," but a non-resident child like himself—who was "born in the Camp Lejeune hospital" and spent "just as much time on the base"—is not. *Id.* at 32. Given this purported irrationality, Mr. Straw asserts that "it is a violation of equal protection and fundamental fairness to exclude anyone born at Camp Lejeune from 1953-1987." *Id.* at 4.

Generously construing these contentions, the Court understands the appellant to be arguing that Congress's line drawing offends the equal protection component of the due process clause of the Fifth Amendment to the U.S. Constitution. *See Bowers v. Shinseki*, 26 Vet.App. 201, 208 n.11 (2013). Despite being able to discern such an argument from his briefs, however, we conclude that

6

Mr. Straw hasn't demonstrated an equal protection violation. When reviewing such a challenge, heightened scrutiny is applied only when legislation employs suspect classifications—e.g., race, sex, national origin—or burdens a fundamental right. *Reeves v. West*, 11 Vet.App. 255, 258 (1998); *see Serv. Women's Action Network v. Sec'y of Veterans Affairs*, 815 F.3d 1369, 1376-77 (Fed. Cir. 2016). The Act does neither. "The Supreme Court has frequently declared that Congress has broad latitude in enacting legislation involving governmental payment of monetary benefits," and when such legislation "is challenged on equal protection grounds as being violative of the Fifth Amendment, the rational basis standard is the appropriate standard of judicial review." *Talon v. Brown*, 999 F.2d 514, 517 (Fed. Cir. 1993).

As we explained long ago, under this standard an "appellant must demonstrate that the varying treatment of different groups or persons is not rationally related to the achievement of a legitimate congressional purpose." *Strott v. Derwinski*, 1 Vet.App. 114, 117 (1991). That is, if Congress's "'classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality.'" *Id.* (quoting *U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 175 (1980)). "Thus, courts will not invalidate on equal protection grounds legislation which it deems unwise or unartfully drawn." *Id.* Simply put, under this standard of review, an appellant's "burden 'to negative every conceivable basis which might support' the law is especially difficult to meet," and a court has no license "'to judge the wisdom, fairness, or logic of legislative choices.'" *Gordon v. Holder*, 721 F.3d 638, 656 (D.C. Cir. 2013) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 315 (1993)).

Mr. Straw hasn't met that burden here. Congress established as a prerequisite for family members seeking VA benefits that they had "resided at Camp Lejeune, North Carolina, for not fewer than 30 days" during a 35-year period. 38 U.S.C. § 1787(a). By doing so, it excluded family members who did not reside at the base, who did reside at the base but for fewer than 30 days, and who did reside at the base for at least 30 days but not during the 35-year period. This classification also treats veterans' family members differently from veterans themselves, who need only have served at Camp Lejeune for 30 days without having resided there. 38 U.S.C. § 1710(e)(1)(F). But Congress could have adopted the 30-day residency requirement for family members for any number of rational reasons, such as a proxy for the likelihood of harmful exposure to contaminants

7

on the base, *see Haas v. Peake*, 525 F.3d 1168, 1192-93 (Fed. Cir. 2008),[5] or the need for administrative feasibility, *see Serv. Women's Action Network*, 815 F.3d at 1377-78.

Mr. Straw's allegations of unfairness and arbitrariness are no doubt sincere, but they fail to show an equal protection violation under the demanding standard applicable here. Congress has the power "to legislate on the basis of such factual assumptions" as are involved under the Act, and general rules are "essential" if legislation like this "is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases." *Califano v. Jobst*, 434 U.S. 47, 53 (1977). The Court has fully reviewed the remaining arguments in the appellant's briefs but concludes that they do not demonstrate his eligibility for the VA benefits he seeks. Accordingly, the Board decision must be affirmed.

Before concluding, however, we think it necessary to address one final procedural matter. Between October 2019 and May 2020, Mr. Straw has filed or attempted to file almost 20 different documents. These range from an April 16, 2020, "Motion to Supplement the Record Regarding Likely VA Retaliation" to various statements and notices providing what he believes is relevant information, such as a March 5, 2020, "Victim Statement." None of these submissions is contemplated by the Court's Rules of Practice and Procedure, which prohibit frivolous filings. U.S. VET. APP. R. 38. "The goal of fairly dispensing justice . . . is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous requests." *In re Sindram*, 498 U.S. 177, 179-80 (1991). Although Mr. Straw is representing himself, he advises us that he is an attorney. *See* Appellant's May 25, 2020, Memorial Day Statement at 1. As such, we expect him to abide by the provisions of U.S. VET. APP. R. 35, which specifies the process for seeking additional review in this Court. We will not consider any additional submissions in this case not made in conformity with the Court's Rules.

### III. CONCLUSION

Having considered the parties' briefs, the record, and the relevant law, the Court AFFIRMS the December 4, 2018, Board decision. All pending motions are hereby denied.

---

[5] Although *Haas* doesn't explicitly mention equal protection, its quotations and citations in this regard all come from the Supreme Court's equal protection jurisprudence. *Haas* was overruled in *Procopio v. Wilkie*, 913 F.3d 1371 (Fed. Cir. 2019) (en banc), but on unrelated grounds.